USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/05/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

ANDRES OSWALDO MOSCOSO BRAVO,

Petitioner,

-v-

KENNETH GENALO, et al.,

Respondents.

---------------------------------------------------------------------- X

26-cv-5687 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Petitioner Andres Oswaldo Moscoso Bravo ("Petitioner") petitions, under 28 U.S.C. § 2241, for a writ of habeas corpus. Dkt. No. 13 (the "Amended Petition" or "Amend. Pet."). For the following reasons, the petition is conditionally granted.

**BACKGROUND**

Petitioner is an asylum seeker from Ecuador. Amend. Pet. ¶ 8. He entered the United States on or about November 29, 2023. *Id.* Upon entering the country, Petitioner was arrested and processed at a DHS facility near San Diego on December 1, 2023. Dkt. No. 7-1. After determining that he "does not appear to be a threat to national security, border security, or public safety," he was "released from the custody of the Department of Homeland Security (DHS) by 'Order of Recognizance' (O.R.) pending" his immigration hearing on his asylum claims. *Id.* at 3; *see also* Dkt. No. 7-3 (Order of Release on Recognizance). Petitioner also was served with a Notice to Appear ("NTA") for immigration proceedings in Philadelphia on June 25, 2024. Dkt. No. 7-2. The NTA charged Petitioner as removable under Section 212(a) of the INA. *Id.* Petitioner provided the address of a friend in Pennsylvania as his destination. Dkt. No. 7-1 at 1;

Amend. Pet. ¶ 12. Ultimately, he moved to New York when that friend was unable to host him. Amend. Pet. ¶ 12.

Petitioner has resided in Staten Island, New York since his release. Amend. Pet. ¶ 9. On Staten Island, Petitioner joined the church of Iglesia Misionera El Shadai, through which he also volunteers in the community. *Id.* He obtained employment authorization, a New York driver's license, and has been employed with the same employer since December 2024. *Id.* ¶ 11.

Petitioner attended his immigration proceedings in Philadelphia as scheduled in June of 2024, at which time he updated his address with the immigration court, and his proceedings were transferred to New York. *Id.* ¶ 13. He filed a timely application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") in September of 2024. *Id.* ¶ 14. He then attended multiple master calendar hearings in New York and continuously updated his address. *Id.* ¶ 15; *see* Dkt. No. 13-1 (Change of Address form filed with the Immigration Court on November 3, 2025). Petitioner was represented by counsel in his immigration proceedings. Amend. Pet. ¶ 16.

On March 24, 2026, an Immigration Judge determined that Petitioner's applications for relief were pretermitted (i.e., terminated) pursuant to Board of Immigration Appeals ("BIA") precedent, and he was ordered removed from the United States to Ecuador. Dkt. No. 8-1 (the "Brodowsky Decl.") ¶ 15; *see also* Dkt. No. 7-4 (Order of the Immigration Judge dated March 24, 2026). Petitioner filed an appeal of that decision to the BIA on April 22, 2026, which remains pending. Brodowsky Decl. ¶ 16; Amend. Pet. ¶ 16.

Petitioner was detained by DHS officers on July 3, 2026. While riding as a passenger in a vehicle that was pulled over, Petitioner was asked if he entered legally or illegally, to which he answered that he "entered seeking asylum." Amend. Pet. ¶ 17. He was then told to exit the car,

was handcuffed, and detained. *Id.* DHS issued a Form I-200 Warrant for Arrest of Alien at that time, which stated that probable cause that Petitioner was removeable existed because biometric confirmation of his identity "affirmatively indicate[s] . . . that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." Dkt. No. 7-5.

Petitioner was then transported to the hold room at 26 Federal Plaza in Manhattan. Amend. Pet. ¶ 18. There, a memo was prepared by John J. Guerra Jr., the Assistance Field Office Director at the NYC Fugitive Operations Unit, that cancelled Petitioner's Order of Release on Recognizance that had been issued on December 1, 2023. Dkt. No. 7-6. That form stated that the cancellation was executed pursuant to "ICE's broad discretionary authority under 8 U.S.C. § 1226(b)." *Id.* ICE also prepared an INA § 236(a) Initial Custody Determination form as required by a settlement reached in *Velesaca v. Decker*, No. 20-cv-1803 (S.D.N.Y. filed February 28, 2020). *See* Dkt. No. 7-7. That form indicates that Petitioner was detained pursuant to 8 U.S.C. § 1226(a), and that although Petitioner demonstrated he was not a danger to persons or property, he was a risk of flight because he "illegally entered the United States, failed to alert DHS of his change of address, has no substantial ties to the community, has no permanent address (Released to PA, Vehicle registered in NJ, has NY License)." *Id.* at 2. DHS Supervisory Detention and Deportation Officer Brenden C. Cuni signed the form authorizing his detention. *Id.* In making that determination, the DHS officer did not ask Petitioner any substantive questions. Amend. Pet. ¶ 19. Petitioner was then presented with a Notice of Custody Determination, which he declined to sign because he understood the officer to be asking for him to agree to deportation. *Id.* ¶ 18; Dkt. No. 7-8.

Petitioner was transferred to Delaney Hall in New Jersey on July 4, 2026, where he has been detained since. Amend. Pet. ¶ 20. Although Petitioner injured his knee three days before being detained and has submitted requests for treatment, he has not received any follow up care at Delaney Hall apart from pain medication. *Id.* ¶ 21.

In response to his petition for habeas corpus, ICE now states that although Petitioner was "initially processed" under 8 U.S.C. § 1226(a), his "detention is actually governed by 8 U.S.C. § 1225(b)(2)(A) because he was apprehended at the border within 14 days of his unlawful entry and within 100 miles of the border." Brodowsky Decl. ¶ 22.

**PROCEDURAL HISTORY**

Petitioner submitted his petition for a writ of habeas corpus *pro se* on Friday, July 3, 2026, the day of his arrest. Dkt. No. 1. On Monday, July 6, 2026, the Court ordered Respondents to submit an answer to the petition, Dkt. No. 3, which Respondents did on July 8, Dkt. No. 6. Respondents then filed a response to the petition on July 10. Dkt. Nos. 7–8.

The Court held a conference on the proceedings on July 13, 2026.[1] At that conference, Respondents did not object to the Court entering an order consistent with the relief awarded by Judge Rochon in *Perez Guedez v. Catletti*, 2026 WL 962575, at *2–3 (S.D.N.Y. Apr. 9, 2026), which would require the Government, within seven days, to hold a bond hearing at which the Government would bear the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk and the IJ, in making a determination on bond and in setting any bond amount, would be required to consider both alternatives to detention and Petitioner's ability to pay. Dkt. No. 9. The Court then instructed

[1] This conference followed an earlier conference on July 9, 2026, that was adjourned following technical difficulties.

Petitioner to reply to Respondents' opposition by July 27, 2026, indicating whether he consents to an order consistent with the above. *Id.*

On July 22, 2026, Petitioner, now represented by pro bono counsel,[2] submitted an Amended Petition. Dkt. No. 13. And on July 27, 2026, Petitioner submitted a letter indicating that he did not consent to an order as outlined in the Court's prior order, and that he sought immediate release and adjudication of his petition. Dkt. No. 14.

**LEGAL STANDARD**

Petitioner proceeds under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention." *Lopez v. Sessions*, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). A petitioner bears the burden of establishing his allegations by a preponderance of the evidence. *Gotti v. United States*, 622 F. Supp. 2d 87, 91 (S.D.N.Y. 2009) (citing *Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997)). "Although § 1226(e) provides that '[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the ... denial of bond or parole,' '[t]he Supreme Court has made clear that § 1226(e) does not . . . limit habeas jurisdiction over constitutional claims or questions of law.'" *G.F.F. v. Francis*, 2025 WL 3141735, at *3 (S.D.N.Y. Nov. 10, 2025) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 849–50 (2d Cir. 2020)).

[2] The Court thanks pro bono counsel for their assistance to the Court in this matter.

## DISCUSSION

It is undisputed that at the time of his detention, Respondents invoked 8 U.S.C. § 1226(a) as the basis thereof. The determination followed the Second Circuit's decision in *Barbosa de Cunha v. Freden*, in which the Second Circuit held that Section 1226(a) applies to noncitizens "present in the United States, but charged as inadmissible for entering the country without inspection and admission." 175 F.4th 61, 73 (2d Cir. 2026). Under that subsection, as this Court previously described,

> "an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Detention is therefore discretionary, and the noncitizen may be released upon application on either bond or "conditional parole." *Id.* § 1226(a)(2)(B); *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). "Critically, under 8 C.F.R. § 1236.1(d)(1), a noncitizen detained under § 1226 may appeal an 'initial custody determination,' including the setting of bond, to an immigration judge." *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 484 (S.D.N.Y. 2025) (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 219–21 (D. Mass. 2025)).

*Tumba v. Francis*, 813 F. Supp. 3d 394, 399 (S.D.N.Y. 2025). The Government's *Velesaca* form indicates that Respondents exercised their discretion to detain Petitioner following a finding that he was a flight risk. Dkt. No. 7-7.

Respondents now argue that despite their initial determination that he should be detained under Section 1226(a), "upon further review" Petitioner's detention is mandatory under Section 1225(b)(2)(A) "because he was apprehended at the border within 14 days of his unlawful entry and within 100 miles of the border." Dkt. No. 8 at 2. Section 1225(b)(2)(A) states that a noncitizen "who is an applicant seeking admission . . . shall be detained." 8 U.S.C. § 1225(b)(2)(A). Respondents' argument raises two questions. First, whether Petitioner could be subject to mandatory detention under Section 1225(b)(2)(A) because he was originally apprehended near the border shortly after his entry. Second, whether the Government may

change the basis of a noncitizen's detention after the original detention determination and without notice to the noncitizen.

The answer to the first question is foreclosed by this Court's prior opinion in *Tumba*. There, the Court confronted the question of whether Section 1225(b)(2)(A) or Section 1226(a) applied to a noncitizen who entered the country without inspection, was stopped by border patrol just days thereafter, was served an NTA and released on her own recognizance, and was then arrested over a year later while attending an appointment at immigration court. 813 F. Supp. 3d at 397. The Court determined that "[a]lthough Tumba is technically an 'applicant for admission' because she has not been formally admitted to the United States, it does not follow that she is necessarily 'seeking admission' under Section 1225(b)(2)." *Id.* at 400. Tumba, like Petitioner here, had been apprehended and released on her own recognizance within 14 days of her illegal entry, and had been apprehended within 100 miles of the border before she was released on her own recognizance for over a year. *Id.* at 397. The Government has provided no authority for its argument that a noncitizen is forever "seeking admission" based on the noncitizen's apprehension close to the border and within 14 days of entrance, regardless of how long he or she then spends in this country thereafter.

The Second Circuit's decision in *Barbosa da Cunha* does not support Respondents' argument that Section 1225(b)(2)(A) applies to a noncitizen like Petitioner. That decision, in dicta, noted that Section 1225(b)(2)(A) "applies to those noncitizens who present themselves at the port of entry for admission, or who cross the physical border into the United States but are apprehended at the 'threshold of initial entry.'" 175 F.4th at 75 (quoting *DHS v. Thuraissigiam*, 591 U.S. 103, 107 (2020)); *see also id.* (citing *Leng May Ma v. Barber*, 357 U.S. 185, 189 (1958) (treating noncitizens paroled into the country "as [if] stopped at the boundary line")). While true

that a noncitizen "at the 'threshold' who [is] ultimately 'denied entry'" is subject to mandatory detention under Section 1225(b)(2)(A), *see Rojas v. Almodovar*, 2025 WL 3034183, at *4 (S.D.N.Y. Oct. 30, 2025), that has no bearing on Petitioner's current detention. Petitioner was not subjected to mandatory detention upon his arrival at the "threshold" of the country; he was released on his own recognizance and has been detained now only after being present in the country since late 2023. *Thuraissigiam*, which *Cunha* cites for the proposition that Section 1225(b)(2)(A) applies at the threshold of entry, is simply inapposite. It stands for the much more limited proposition that a noncitizen does not acquire due process rights because they "succeeded in making it 25 yards into U.S. territory before he was caught." 591 U.S. at 139. Nor does the Supreme Court's opinion in *Leng May Ma* counsel otherwise. There, the Supreme Court merely determined that "a noncitizen paroled into the United States" is not "considered 'legally within the United States.'" *Simms v. Arteta*, 2026 WL 2076009, at *3 (S.D.N.Y. July 17, 2026) (quoting *Leng May Ma*, 357 U.S. at 190). That conclusion has no impact on the fact that Petitioner remains an "applicant for admission" who has "not been admitted" to the United States. *See id.*

Having answered the first question in favor of Petitioner, there is no need for the Court to reach the second. Even assuming that Respondents are permitted to change the basis for Petitioner's detention, he is not subject to mandatory detention under Section 1225(b)(2)(A), and is entitled to the added procedural protections of Section 1226(a) including a discretionary detention determination and eligibility to present his case for bond before an Immigration Judge thereafter.

The question remains as to the Petitioner's relief. Petitioner argues that immediate release is warranted, while the Respondents argue that the appropriate relief is a bond hearing

before an Immigration Judge. The correct result depends on the extent to which the Court can inquire into the circumstances surrounding the initial detention determination by the DHS on this record. In connection with his detention, Respondents submitted an INA § 236(a) Initial Custody Determination, in which the supervisory officer indicated that he determined that detention was warranted on the basis that Petitioner had not established that he does not pose a flight risk. Dkt. No. 7-7 at 2. That decision was informed by the facts that Petitioner "illegally entered the United States, failed to alert DHS of his change of address, has no substantial legal ties to the community, and has no permanent address (Released to PA, Vehicle registered in NJ, has NY License)." *Id.* Petitioner argues that although Respondents claim that this review was "individualized," that claim is "inaccurate" because Petitioner "was not asked a single substantive question during processing" and because "the determination rendered by Respondents is predicated almost entirely on erroneous information." Amend. Pet. at 1; *see also id.* ¶¶ 18–19 ("The officer did not ask [Petitioner] any other questions" apart from whether he wanted to sign the form). Petitioner argues that, to the contrary, "he has deep community ties, and he has repeatedly updated ICE with his address by updating both the immigration court and ICE." *Id.* ¶ 45. Petitioner alleges that the detaining officer violated the Administrative Procedure Act, 5 U.S.C. § 706(2) ("APA"), because he "failed to consider an important aspect of the problem, offered an explanation for [his] decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Amended Pet. ¶ 62 (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007)). He also asserts that his due process rights under the Fifth Amendment were violated because the detaining officer gave him no opportunity "to be heard as

to his detention" and that the factual justification for his detention was "completely erroneous." Amend. Pet. ¶ 45.

The Court has no jurisdiction to consider whether Petitioner's arrest was arbitrary and capricious under the APA. The APA does not apply whenever "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). Section 1226(e) is precisely such a statute. It provides: "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to general review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). The statute makes unreviewable "a specific act or decision regarding bond or parole decisions." *Miranda v. Garland*, 34 F.4th 338, 352 (4th Cir. 2022). The bar to review applies "to 'discretionary' decisions about the 'application' of § 1226 to particular cases." *Nielsen v. Preap*, 586 U.S. 392, 401 (2019) (plurality op.) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018)). Accordingly, to the extent Petitioner asks the Court to examine how the ICE officer exercised the discretion granted to him, the Court lacks jurisdiction to do so. *Hamilton v. Shanahan*, 2009 WL 5173927 (S.D.N.Y. Dec. 30, 2009) ("Section 1226(e) specifically divests this Court of jurisdiction to review the decisions of the IJ and the BIA (acting on behalf of the Attorney General) regarding detention of aliens under section 1226. . . . Accordingly, this Court lacks jurisdiction over Hamilton's Petition to the extent it asks the Court to review the weight that the IJ or BIA assigned the evidence or any other discretionary determinations the IJ or BIA made, including the determination that Hamilton must be detained pending a decision on whether he should be removed."). The gravamen of Petitioner's claims is that a specific custody determination by an individual ICE officer violated his rights. *See* Amend. Pet. ¶¶ 18–19, 31, 45 (conceding that Petitioner has been "afforded . . . an initial custody

determination" but arguing that the basis for detention was "completely erroneous"). Petitioner's fact-specific challenge to the detaining officer's decision is at the core of what § 1226(e) insulates from judicial scrutiny. *See Arevalo-Guasco v. Dubois*, 788 F. App'x 25, 27 (2d Cir. 2019) (summary order) (finding that Section 1226(e) precludes judicial review of the agency's weighing of evidence and factual findings regarding whether petitioner is a danger to the community).

Petitioner cannot escape the effect of Section 1226(e) by claiming that the detaining officer made an error of fact. "[T]his Court cannot second-guess the wisdom of the executive branch's exercise of its discretion," *Nevarez Jurado v. Freden*, 813 F. Supp. 3d 376, 385 (W.D.N.Y. 2025), and that discretion includes the "correctness of . . . fact-finding," *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 39 (2d Cir. 2008). *Id.* ("[A] petitioner cannot use the rhetoric of a 'constitutional claim' or 'question of law' to disguise what is essentially a quarrel about fact-finding or the exercise of discretion." (cleaned up)). The Supreme Court has recognized that, in the context of an Immigration Judge, their "underlying factual determination[s]" are discretionary and therefore unreviewable. *Wilkinson v. Garland*, 601 U.S. 209, 222 (2024); *see also id.* (factual question[s] raised in an application for discretionary relief" are unreviewable).[3] "For instance, an IJ's factfinding on credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides" are all unreviewable discretionary judgments. *Id.* at 225; *see Espana v. Nessinger*, 2026 WL

[3] *Wilkinson* addresses a different provision of the INA, 8 U.S.C. § 1252(a)(2)(B), which "strips courts of jurisdiction over 'judgment[s] regarding the granting of [discretionary] relief . . .'". *Wilkinson*, 601 U.S. at 218. However, it is relevant to Section 1226(e), because both provisions bar judicial review of "discretionary judgments." *Patel v. Garland*, 596 U.S. 328, 341–42 (2022).

821788, at *5 (D.R.I. Mar. 25, 2026). The same applies *a fortiori* to the DHS officer tasked by statute and regulation to make the discretionary determination in the first instance.

Section 1226(e) "does not block lawsuits over 'the extent of the Government's detention authority under the 'statutory framework' as a whole," *Nielsen*, 586 U.S. at 401,[4] and allows a challenge to a "categorical, across-the-board" policy or practice, *Miranda*, 34 F.4th at 352. *See Demore*, 538 U.S. at 516–17 (rejecting the argument that Section 1226(e) precludes habeas review but noting that it does preclude review of "a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release"); *Afr. Communities Together v. Lyons*, 799 F. Supp. 3d 362, 393 (S.D.N.Y. 2025) (discussing that "ICE Courthouse Arrest Policies" are reviewable, notwithstanding § 701(a)(1), because plaintiff challenged the "policies" rather than the determinations themselves), *modified*, 2026 WL 1382944 (S.D.N.Y. May 18, 2026). In addition, Section 1226(e) does not "limit habeas jurisdiction over constitutional claims or questions of law." *Velasco Lopez*, 978 F.3d at 850 (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)).

However, Petitioner has not identified any policy or practice pursuant to which he was arrested that is contrary to regulation or statute. To be sure, the Government may not be able under Section 1226(e) to sweep up every noncitizen who entered the United States without examination, or who overstayed a visa, and then leave it to the Immigration Judge to determine who should be retained and who should be let go. Under the law and under the *Velesaca* settlement, the arresting officer is required to make an individualized determination whether

---

[4] Though two of the justices in the majority did not join the plurality's observation about the scope of Section 1226(e), the four dissenting justices in *Nielsen* did not object to the "jurisdictional analysis" of the plurality opinion and instead addressed the merits, indicating that seven justices "must have agreed that § 1226(e) was not a bar" to a lawsuit concerning the Government's authority to detain under § 1226(c). *Miranda*, 34 F.4th at 353.

detention is warranted. *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020) (noting that the Government did "not dispute that 8 U.S.C. § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination"); *Tumba*, 813 F. Supp. 3d at 404 (a noncitizen detained under Section 1226 is entitled to "an individualized determination by a DHS officer" as to whether to be conditionally released); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492–93 (S.D.N.Y. 2025) (that ICE officials are required to make an "individualized custody determination . . . follows from the text of § 1226(a)" (cleaned up)). Petitioner has offered no evidence, however, that his arrest was the product of such a policy. Moreover, while Petitioner complains that the detaining officer did not ask him questions, the statute and implementing regulations do not require that the detaining officer ask questions of a noncitizen in determining whether to exercise his discretion. An individualized determination can be made through means other than the questioning of the noncitizen. An officer who has reason to believe from court records that the noncitizen is a dangerous felon on the run from law enforcement may make the decision to detain without any further information from the noncitizen bearing on risk of flight or dangerousness. Under the regulations, the detaining officer is permitted to use discretion to release a noncitizen where the noncitizen has, in the officer's discretion and on the basis of whatever he has reviewed, demonstrated to the officer's satisfaction that the noncitizen is neither a flight risk or danger to the community. *See* 8 C.F.R. § 236.1; 8 C.F.R. § 1236.1; *see also Huanga v. Decker*, 599 F. Supp. 3d 131, 149 (S.D.N.Y. 2022) (discussing the "clear discretion accorded to immigration officers to detain aliens unless shown to their satisfaction that the alien was not a risk of flight or threat to the community" under 8 C.F.R. § 236.1). The regulations do not prescribe questions the officer is to ask before taking a person into custody.

Petitioner's argument is no more successful framed as a violation of due process. Notice and an opportunity to be heard are, of course, at the center of due process. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it."); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (including for noncitizens, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that" the Constitution protects). In the immigration context, "detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Particularly where the detaining officer has exercised discretion, the Supreme Court and Second Circuit have indicated that due process does not require that the noncitizen be heard at the precise moment of detention. *See Demore*, 538 U.S. at 526 ("the Government may constitutionally detain deportable aliens during the limited period necessary" for further proceedings); *Velasco Lopez*, 978 F.3d at 853 (suggesting that "required procedural protections" are lesser "at the moment of initial detention"). In Petitioner's circumstances, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1), 1236.1(d)(1)); *Johnson v. Guzman Chavez*, 594 U.S. 523, 527–28 (2021). The Office of the Chief Immigration Judge Immigration Court Practice Manual further clarifies that "after receiving a request for a bond hearing, the immigration court" must "schedule[] the hearing for the earliest possible date and notif[y] the alien and DHS." Executive Office for Immigration Review, U.S. Dep't of Justice, *Immigration Court Practice Manual* § 8.3(d) (2025). It is at such a bond hearing that a noncitizen can affirmatively present evidence demonstrating that they are neither a flight risk nor

danger to the community. *See Sidqui v. Almodovar*, 823 F. Supp. 3d 364, 378 (S.D.N.Y. 2026) ("[I]f detained, a noncitizen may then request a bond hearing before an immigration judge, where the noncitizen may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." (quoting *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 400 (E.D.N.Y. 2025)); *see also* 8 C.F.R. § 1003.19 ("The determination of the Immigration Judge as to custody status or bond may be based on any information that is available to the Immigration Judge or that is presented to him or her by the alien or [ICE]."). Petitioner has made no showing that such procedure violates due process. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209–13 (9th Cir. 2022) (holding that "§ 1226(a)'s procedures satisfy due process, both facially and as applied to [petitioner]" because such procedures include that when "ICE initially detain[s] [a petitioner], an ICE officer [makes] an individualized custody determination" that is subject to multiple layers of review).

At the conference in this matter held on July 13, 2026, Respondents did not object to the Court entering relief consistent with that awarded by Judge Rochon in *Perez Guedez*, 2026 WL 962575, at *2–3. Judge Rochon ordered on facts similar to those here that the petitioner was entitled to a bond hearing at which the Government would bear the burden of proving, by clear and convincing evidence, that the petitioner was a danger to the community or flight risk, and that in determining whether to grant bond, the immigration judge was required to consider the availability of alternative conditions of release and in determining the amount of any bond imposed, the immigration judge would consider the Petitioner's ability to pay. Where as here the record before the Court on a habeas petition demonstrates that the DHS officer did in fact make an individualized determination, the petitioner is not entitled to anything more. *See Perez Guedez*, 2026 WL 962575, at *1 (ordering a bond hearing rather than release where an initial

determination of dangerousness was made because "prior to petitioner's rearrest and detention," they "identified derogatory information in petitioner's record—namely his designation as a Known Suspected Terrorist based on his having tattoos that are commonly associated with membership in Tren de Aragua."); *Guachambala v. Lyons*, 2026 WL 686154, at *2 (S.D.N.Y. Mar. 10, 2026) (ordering bond hearing rather than release where "[t]here is evidence in the record that suggests the Government may have exercised some discretion in detaining Petitioner" because he "has an outstanding arrest for drunk driving," and "admitted that the did not have legal status").[5] Ultimately, this is not a case where there is a "complete absence of any reason for Petitioner's arrest under Section 1226." *See Tumba*, 813 F. Supp. at 404.[6]

---

[5] Petitioner cites several courts in this Circuit that have reached a different conclusion, but those cases are either inapposite or unpersuasive. In *Herrera v. Blanche*, 2026 WL 1674206, at *4 (E.D.N.Y. June 10, 2026), and *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026), the court was confronted with the question whether the Government could justify *post hoc* as a discretionary detention an arrest that was originally made because it was deemed mandatory under Section 1225. As noted, that question is not presented here. The Government has always taken the position that Petitioner's arrest was made because the Immigration Officer deemed it to be appropriate in the exercise of his discretion based on risk of flight. In other habeas proceedings, petitioners have successfully challenged their detention where the only evidence before the immigration officer was that the noncitizen at issue had no legal presence in the United States. *See Centeno Rochez v. Genalo*, 2026 WL 1948773, at *2 (E.D.N.Y. July 6, 2026). In this case, however, the officer's determination rested on several different grounds beyond Petitioner's legal status.

[6] Because the Court concludes that Section 1226, not Section 1225(b)(2)(A), applies to Petitioner and that the Government has exercised the requisite, unreviewable discretion to initially detain Petitioner pursuant to Section 1226, the Court does not reach his claim that his arrest was in violation of 8 U.S.C. § 1357 (and thereby the Fourth Amendment). *See* Amend. Pet. ¶¶ 49–54. Under § 1357, ICE may detain a noncitizen without a warrant when a person is "likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). First, Respondents do state that a Form I-200 Warrant for Arrest of Alien was issued. Brodowsky Decl. ¶ 18. Petitioner argues that "on information and belief," that warrant was not issued until after his detention. Amend. Pet. ¶ 52. But on a petition for a writ of habeas corpus, the petitioner bears the burden to prove his allegations by a preponderance of the evidence. *Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997). Additionally, Respondents state that they arrested Petitioner after a license plate check at which they determined that he was "illegally present in the United States, and that he failed to report to an ICE/ERO Field Office as required by his release on OREC." Brodowsky Decl. ¶ 18. The Court need not determine whether that reasoning would be

**CONCLUSION**

The petition for a writ of habeas corpus is CONDITIONALLY GRANTED.

Accordingly, with consent of Respondents, by August 15, 2026, the immigration court must either (1) hold a bond hearing at which the Government bears the burden of proving, by clear and convincing evidence, that Petitioner is a danger to the community or flight risk, or (2) release Petitioner. In determining whether to grant bond, the immigration judge shall consider the availability of alternative conditions of release; in determining the amount of any bond imposed, the immigration judge shall consider the Petitioner's ability to pay.

To avoid the relief in this Order becoming illusory, the Government is enjoined from exercising the automatic stay should the IJ determine that release on bond is appropriate. The Court retains jurisdiction over this matter to ensure compliance with this Order and, should it determine that its Order has not been complied with, also retains jurisdiction to grant Petitioner the full relief he has sought (i.e., release). *See O.F.C. v. Almodovar*, 2026 WL 74262, at *16 (S.D.N.Y. Jan. 9, 2026). The Government is ordered to provide the Court a transcript of any hearing that takes place before an immigration judge within one week of such hearing.

The Clerk of Court is respectfully directed to close Dkt. No. 1.

SO ORDERED.

Dated: August 5, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge

---

sufficient under Section 1357 to establish that the noncitizen was likely to escape before a warrant could be obtained. *See Curimilma Quille v. Blanche*, 2026 WL 1453889, at *6 (E.D.N.Y. May 22, 2026) (finding such an explanation from non-percipient witness to be insufficient).